HEARD APRIL TERM, 1879.

CASE No. 752.

GEORGE M. BROWN v. C. J. CONEY ET AL.

1. The statutory lien given by the act of 1791, in cases of partition of an intestate's real estate, arises only when such partition has been made pursuant to the provisions of that act, and by a court of competent jurisdiction.

2. In the absence of any evidence by record or parol, of the existence of a judgment in partition, such judgment will not be inferred from imperfect and incomplete records of proceedings prior to the writ of partition, showing, in themselves, that the proper parties were not all before the court, although such records are supplemented by parol evidence of an actual partition by certain persons, two of whom were named as commissioners in the order for the writ, and by proof of the loss of records of an adjoining county, in which the decree, if rendered, was signed, and of the papers in the office of the complainant's solicitor.

Before TOWNSEND, J., at Marion.

This was an action brought by George M. Brown, as assignee of his father, Moses W. Brown, against Christopher J. Coney, James A. Brown, Robert N. Brown, Mary P. Manheim and Michael Manheim. Mary E. Brown died intestate in 1844, leaving as her distributees her husband, Moses W. Brown, and five children, Robert N. Brown, J. A. Brown, Mary P. Brown, (afterwards Rugg and now Manheim), David W. Brown and George M. Brown ; and possessed of a tract of land containing five thousand acres. The children were all minors, and they, with their father, lived upon this land until 1859 or 1860, when Moses W. Brown moved to Florida. In August, 1860, a bill was filed, as stated in the opinion of the court, by M. W. Brown and R. N. Brown against A. J. Rugg and wife and others, praying a partition of this land. The two elder children, R. N. and James A., were then of age ; the other three were minors, and continued so to be until after the court held at Darlington, in February, 1861, with the possible exception of Mary, who was born in 1840, month not given. The fragments of the records of that case are stated in the opinion of the court. Julius Dargan was the solicitor who filed the bill. By common consent, Chancellor Carroll held a court at Darlington, in February, 1861, for the transaction of business for the counties of Marion, Marlborough, Chesterfield and Darlington. There was evidence that the bill and other papers in the cause were taken over to Darlington at that time. A day or two after the adjournment of this court, Mr. Dargan was taken ill and died within a few weeks. Mr. Dargan's papers afterwards suffered loss from several removals and from a fire. Many of the records of the court at Darlington have been destroyed by a fire occurring since 1861. The records of the court at Marion show no entries or copies of any papers in this cause.

According to parol evidence submitted by plaintiff in this action, including that of the commissioners in partition, there was a writ of partition executed by four commissioners, two of whom are named in the order for the writ introduced in evidence. From this testimony it appears that all of the children received,

K

under the return to this writ, about their share, except James A., who received over one thousand acres, charged with the payment of $1750 to his father, who received no land.

Subsequently Moses W. Brown sold this alleged claim to his son, George M. Brown, and James A. Brown sold the land to the defendant, C. J. Coney. George M. Brown then brought this action against C. J. Coney to enforce this demand, claiming a statutory lien under the act of 1791;* or, if the court determined that no partition of the lands of Mary E. Brown had ever been made, then judgment was prayed that the interest of the plaintiff in this tract of land, both as assignee of his father and also as heir-at-law of his mother, be set apart to him in severalty. The other defendants named are plaintiffs' brothers, his sister and her husband.

Under the view taken of this case by the court, a statement of the testimony is unnecessary. The defence was, purchaser for valuable consideration without notice, *estoppel in pais* and no partition; that if other defences fail there should be partition of all of Mary E. Brown's lands.

Upon the point decided by this court, the Circuit Court held that under the authority of *Smith* v. *Smith, Rice* 232, and *McQueen* v. *Fletcher,* 4 *Rich. Eq.* 152, parol evidence was admissible to complete the record and show the partition; and that such parol evidence clearly showed a partition, and that J. A. Brown received more than his share and was to pay the excess, $1562.33, to M. W. Brown, which gave to M. W. Brown a lien under the statute on this tract of land.

From this decree the defendant, Coney, appealed.

*Mr. W. W. Harllee,* for appellant.

The first ground of appeal attacks the decree of the Circuit judge on his conclusion that there was a judgment in partition in this case as unsupported by evidence. It is submitted that his Honor is entirely at fault in his deductions from the cases of *Smith* v. *Smith, Rice* 232, and *McQueen* v. *Fletcher,* 4 *Rich. Eq.* 152, as in both of those cases it will be seen that the *judgment of the court was produced as matter of record,* and the questions there

---

* See note, *ante* p. 131.

were, could secondary evidence of the previous proceedings be received in proof of the service and preliminary proceedings to support the judgment, which, of itself, presumed that it was properly rendered with the proper parties before the court. But here it is sought to prove a judgment by *parol* by showing the commencement of the action, the service on a portion of the parties and the order for a writ of partition to issue. It is admitted that none of these proceedings amounted to a judgment, and it is conceded that there is no evidence that the return was ever before the court, or that it was ever heard by it. How, then, can the cases of *Smith* v. *Smith* and *McQueen* v. *Fletcher* apply, or even furnish an analogy, when in each the order confirming the returns was produced and made the judgment of the court? The only proof of a judgment is the production of the record.

It may be that positive proof of the *existence* of the judgment being furnished and the loss of the record established, the court might admit secondary evidence of its contents. But there is not only no proof here of the existence of the judgment or order confirming the return, but no proof of the loss of any record of it, where it should properly be. The fact that the Court of Equity was held at Darlington for the Circuit in 1861, and the loss of some records belonging to that district, is no evidence that a cause belonging to Marion was filed there or recorded on the minutes of the court for Darlington. The presumption would be that not only the records would be separate, but that the separate officers of the respective districts would have the custody of their own papers, as the law made it their duty to have.

It is a *novel* proposition, to say the least of it, that the death of the counsel having the case in charge is evidence that there was a judgment. Such a proposition shocks the judgment of every one looking to its consequences. But supposing there was a judgment, what was it? No one of the *commissioners* says what was to be paid to M. W. Brown by James A., or his sister, Mrs. Rugg.

M. W. Brown swears that no provision was made for him by the commissioners, but one of them, S. C. James, requested him to release, which he refused to do.

R. N. Brown and James A. Brown both prove that by the

return James A. was to pay M. W. Brown $1750, the excess over his share; and yet the Circuit judge finds $1562.33, the amount of the judgment, and orders it to be paid or the land sold. But this is not all. Could there have been a confirmation of the return with the pleadings in the shape they are proven to be?

1. Three of the defendant's distributees were minors, a blank order, not signed, appointing      their guardian *ad litem.*

2. The consent of these *infant* defendants to the issuing of a writ of partition.

3. An order for a writ of partition to issue to Thomas Eaddy, Ezra Eaddy, Dr. Thomas R. Bass, I. R. Timmons and J. T. Bostick.

4. The *evidence* of the commissioners that neither of the three first named acted, but the two last, with two others (strangers to the record), undertook to divide the lands.

Can it be pretended that on this showing the Court of Equity of this state, in 1861, or any court of competent jurisdiction, would have confirmed such a return? To presume such a thing would be to stamp the ministers of justice with gross ignorance or recklessness, and affords a good reason why a gentleman of Mr. Dargan's experience, capacity and character did not have the return, confirmed or made of record.

*Messrs. Johnson & Johnson,* for respondent.

The first question in this case is, was there, in 1860 and 1861, any division made of the tract of land described in the complaint, amongst the heirs-at-law of Mary E. Brown, by the Court of Equity?

As a question of fact, it has been decided in the affirmative by his Honor Judge Townsend, and this court will not reverse his finding unless the evidence is overbearing that his decision was wrong. It is not sufficient that this court, on the same evidence, might have come to a different conclusion. *Rice* 232; 1 *S. C.* 325.

The judge is fully supported by the evidence. The competency of the parol evidence is sustained, and the imperfection of the pleadings can in no way affect the validity of the partition. 4 *Rich. Eq.* 152; *Rice* 232.

July 30th, 1879.   The opinion of the court was delivered by

McIVER, A. J.   To sustain the Circuit decree in this case, it is necessary that this court should be satisfied that a partition of the real estate of the late Mrs. Mary E. Brown has been made, under the order of a court of competent jurisdiction, pursuant to the provisions of the act of 1791.   Until this is established the statutory lien set up by the plaintiff cannot arise.   Such a lien is a creature of the statute, and unless it is made to appear that partition has been made under that statute, such lien can have no existence.   For, while it may be very true that the parties themselves may make a valid partition, by the terms of which one of them may be required to pay to another a sum of money for equality of partition, yet, certainly, such an agreement cannot give rise to the statutory lien sought to be set up in this case, but the amount thus agreed to be paid would be like any other debt arising from a promise to pay, which may or may not be secured by a lien, according as the parties may agree.

As we do not agree with the Circuit judge in the conclusion which he has reached, inasmuch as we do not think there was any legal evidence that a partition was ever made by the Court of Equity, this is the only matter necessary to be considered, for, until a partition by the order of a court has been established, the other questions discussed cannot properly arise.   It is not pretended that there was any direct evidence whatever of any judgment or final order for the partition of the land in question, either by record or by parol.   No such record was produced, and no witness testified that any such record had ever existed.   The court below, however, inferred the existence of such a judgment from fragments of a record which were introduced, supplemented by parol testimony.   The record evidence introduced is thus stated by the Circuit judge : "The original bill filed by M. W. Brown and R. N. Brown against A. J. Rugg and wife and others, in which are described the lands of Mary E. Brown, with a prayer for a partition of the same among her heirs-at-law, is before the court.   The original bill was filed on the 29th of August, 1860.   The original *sub. ad res.*, with the return of the sheriff and a copy of the will of S. S. Anderson, is on exhibit and produced with the will.   A written consent of three of the

parties for a writ of partition, the order of the commissioner in equity, dated November 20th, 1860, for the writ to issue, and an unsigned order for the appointment of a guardian *ad litem* for the infants, are also produced. These papers constitute all the recorded evidence in relation to the partition. No writ of partition, return of the commissioners or order confirming the same, has been found, after diligent search in the public offices, or in the office or among the papers of J. A. Dargan, the attorney who was employed to institute the proceedings for partition. No copies of these papers can be found in the record books, either in the offices in Darlington or Marion counties." To this it may be added that it appears from the evidence as presented in the brief that the sheriff's return on the *sub. ad res.* shows that only one of the defendants, J. A. Brown, was personally served, a copy being left at his residence for G. M. Brown, who was a minor at that time; and the only other defendant mentioned in the return is D. W. Brown, also a minor, as to whom the return is, "cannot find D. W. Brown in my district, or that he has any dwelling place therein." An acceptance of service is endorsed upon the *sub. ad res.*, signed by A. J. Rugg, "for self and wife," the latter probably being a minor at the time, as her name is embraced among the infant defendants named in the "unsigned order for the appointment of a guardian *ad litem* for the infants." It also appears that this order is not only "unsigned," but it does not contain the name of the person to be appointed, a blank being left apparently for that purpose. The written consent for the writ of partition purports to be signed by Mary P. Rugg and G. M. Brown, one of whom was certainly, and the other probably, a minor at the time. Again, the order of the commissioner in equity for the writ of partition requires that it shall be directed to five persons named therein, while the parol evidence introduced shows that *only two*, not a majority, of those persons acted in making the division of the lands, assisted by two other persons whose names nowhere appear in any order or other part of the record introduced. It should also be added that while there was testimony as to the destruction of the records in Darlington, there was no such testimony as to those in Marion, where the

lands in question are situated, and where the records of any proceedings for partition properly belong.

Now, while the cases of *Smith* v. *Smith*, *Rice* 232, and *McQueen* v. *Fletcher*, 4 *Rich. Eq.* 152, upon which the Circuit judge bases his conclusion, may be sufficient to establish the proposition that where the record of the *judgment* in partition or *final order* confirming the return of the commissioners is introduced, that it shall be sufficient to warrant the conclusion that all the previous proceedings were regular, and that the missing portions of the record may be supplied by parol evidence, yet those cases do not support the conclusion reached by the court below, for, in both of those cases, the final order confirming the return of the commissioners was introduced, showing that the court had rendered judgment, while in this case no such evidence has been introduced. But when we are asked to infer the existence of a judgment or final order, of which there is no evidence, either by record or by parol, because of the fact that certain portions of a record, looking to such judgment or final order, are introduced, even though supplemented by the parol evidence offered in this case, the proposition assumes a very different shape and cannot command our assent. It may admit of grave doubt whether such an inference would be warranted, even if the portions of the record which were introduced, supplemented by the parol evidence introduced in this case, showed that all the previous proceedings were entirely regular up to the time when the commissioner in equity granted the order for the writ of partition, the last piece of record evidence which was introduced, and that all persons interested in the subject matter of the suit were properly made parties. But in this case the portions of the record which were introduced do not show that the previous proceedings were regular; or that the necessary parties were properly brought before the court. The sheriff's return shows that only one of the defendants was properly served with process, although it does appear that another, who, however, was only a party in right of his wife, did acknowledge service. The acceptance of service, signed by A. J. Rugg, "for self and wife," was, certainly, not sufficient to make her a party, especially if she was, as we are bound to presume she was, a minor at the time, for she is named

in the order drawn for the appointment of a guardian *ad litem* as one of the infant defendants, and there is nothing to show that she afterwards, and before the acceptance of service was signed, attained her majority. There is no evidence that a guardian *ad litem* had ever been appointed for the infant defendants, or, if appointed, there is no evidence to show that the person so appointed accepted the office, or appeared in the case as such. This, of itself, was a fatal defect, quite sufficient to negative the idea that a Court of Equity would have rendered judgment or granted a final order. For, while the cases of *Bulow* v. *Witte,* 3 *S. C.* 308, and *Walker* v. *Veno,* 6 *S. C.* 459, do announce the proposition that, under the former system of equity procedure, to make an infant a party defendant it was not necessary that he should be served with process of subpœna, or that an answer should be filed by a guardian *ad litem* for him; they both recognize the necessity of his appearing by a guardian *ad litem,* for, in both of those cases, a guardian *ad litem* had not only been duly appointed, but it appeared from the record that such guardian had consented to act, had appeared in the case and consented to the orders sought to be set aside, and this was regarded as sufficient. But in this case nothing of the kind appears upon the record, and, on the contrary, from what does there appear, it would seem that no guardian *ad litem* had ever been appointed. The only evidence upon the subject is that contained in the parol testimony of Robert Brown, where, in speaking of the division of the land, he says: "D. W. Brown and George M. Brown were minors at the time, and George J. Myers *acted* as their guardian *ad litem in division,* but when, or by what authority he was appointed as such, or whether, in fact, he ever was so appointed, or ever appeared in the case, he does not pretend to say." Again, the parol evidence shows that only two of those to whom the writ of partition was directed to issue acted in making the division of the lands, while it nowhere appears how or by what authority the other two persons who acted with them took upon themselves the performance of such duty. It will not do to say that the order of the commissioner in equity for the writ of partition to issue is sufficient to authorize the presumption that everything was regular up to that time, especially in the face of

the serious defects and irregularities just pointed out, for it must be remembered that, while by the act of 1840, (11 *Stat.* 157), the commissioner in equity was authorized to grant writs of partition, yet the statute requires that "all such writs shall be made returnable to the next succeeding sitting of the court *for the adjudication of the Chancellor.*" And it is well known that where writs of partition were issued under an order from the commissioner, the general, if not universal, practice was for the Chancellor to scrutinize closely all the previous proceedings, to see that everything was regular, and especially to see that all necessary parties were properly brought before the court; whereas, when the writ was issued under the order of a Chancellor, it was not regarded as necessary to go behind such order. So that it seems to us, instead of inferring from such portions of the record as have been produced, even supplemented by the parol testimony introduced, that these proceedings culminated in a final judgment, the more natural inference would be that the Chancellor, looking into the proceedings and discovering the irregularities and defects to which we have alluded, declined to grant the final order, and, therefore, that there was no such judgment in partition as would give rise to the statutory lien set up by the plaintiff.

From the view which we have taken of this case the question raised in appellant's argument as to whether a statutory lien can arise where land is assigned to one or more of the parties who are required to pay something to the others to equalize the partition, or whether such lien can only be created where the land is ordered to be *sold* for the purpose of making partition, does not properly arise, and has not, therefore, been considered. The plaintiff, in his complaint, demands judgment in the alternative, first, for a foreclosure of the statutory lien, but "if the court is not satisfied that a legal partition was made of the lands of Mary E. Brown, then that the interest of the plaintiff in said lands, of which Coney is in possession, both as heir-at-law of his mother and as assignee of his father, be set apart to him in severalty," &c.; but as that part of the complaint could not well be considered or adjudicated by the court below, under the view taken by that court, and, as it may be worthy of consideration whether all the parties necessary to such adjudication are now before the

court, we do not propose to consider any of the questions which might arise in that aspect of the case, but to refer all such questions to the Circuit Court.

It is therefore ordered that the judgment of the Circuit Court be set aside, and that the case be remanded to that court for further proceedings, with leave to the plaintiff to apply to the Circuit Court for such amendments as may be deemed necessary to enable him properly to litigate any rights which he may claim to have to a partition and account for rents and profits.

Judgment reversed.

WILLARD, C. J., and HASKELL, A. J., concurred.